```
          UNITED STATES DISTRICT COURT
             DISTRICT OF MINNESOTA
           Civil No. 15-4296(DSD/KMM)
```

Saeid Azimpour,

       Plaintiff,

v.                                          **ORDER**

Select Comfort Corporation,

       Defendant.

     Erin G. Comite, Esq. and Scott + Scott, LLC, 156 South Main Street, P.O. Box 192, Colchester, CT 06415; Joseph P. Guglielmo, Esq. and Scott + Scott, LLP, The Chrysler Building, 405 Lexington Avenue, 40th Floor, New York, NY 10174; and Richard Lockridge, Esq. and Lockridge Grindal Nauen, PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, counsel for plaintiff.

     Heidi A. O. Fisher, Esq., Peter D. Stitler, Esq. and Fox Rothschild LLP, 222 South Ninth Street, Suite 2000, Minneapolis, MN 55402, counsel for defendant.

     This matter is before the court upon the motion to dismiss or, in the alternative, to strike by defendant Select Comfort Corporation. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion to dismiss is granted.

**BACKGROUND**

     This consumer fraud action arises from plaintiff Saeid Azimpour's purchase of a pillow from Select Comfort. Azimpour alleges that on July 19, 2015, he went to the Select Comfort store

in San Diego, California in search of a high-quality pillow. Compl. ¶ 21. Azimpour ultimately purchased a Sleep Number Down Alternative Pillow for $48.59. Id. Azimpour alleges that he purchased the pillow because it was listed as 50% off the regular purchase price of $89.99. Id. Azimpour further alleges that Select Comfort sold the pillow for the same sale price during the 90 days preceding his purchase. Id. ¶ 22. According to Azimpour, Select Comfort misrepresented that the pillow was regularly priced at $89.99, given that it had been "on sale" for such a lengthy period of time before his purchase and remained on sale four months after his purchase. Id. ¶¶ 4, 22. He alleges that he would not have purchased the pillow, or would not have paid as much for the pillow, absent the misrepresentation. Id. ¶ 22. Azimpour asserts that Select Comfort has engaged in a continuous company-wide, years-long deceptive discount pricing scheme by advertising its products as discounted from fictitious "regular" prices. See id. ¶¶ 5, 15, 39.

On December 4, 2015, Azimpour filed a putative nationwide and California class action complaint seeking damages and injunctive relief. With respect to the nationwide class action, he alleges unjust enrichment[1] and violations of Minnesota's consumer protection statutes. Azimpour defines the nationwide class as "All

---

[1] Azimpour alleges the unjust enrichment in the nationwide class in the alternative to the unjust enrichment claim on behalf of the California class. Compl. ¶¶ 76, 77.

individuals residing in the United States and its territories who purchased one or more items from Defendant advertised or priced at a discount from an original retail price any time between December 1, 2011 and the present (the "Class Period")." Id. ¶ 29.

As to the California class action, he alleges unjust enrichment and violations of various Minnesota and California consumer protection statutes. Azimpour defines the California class action as "All individuals residing in the State of California who purchased one or more items from defendant advertised or priced at a discount from an original retail price any time between December 1, 2011 and the present (the "California Class Period")." Id. ¶ 30. Azimpour has not yet filed a motion to certify the classes.

Select Comfort now moves to dismiss or, in the alternative, to strike the allegations relating to products other than the pillow Azimpour purchased.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim

3

has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

Azimpour's consumer protection claims, which sound in fraud, must also meet Rule 9(b)'s heightened pleading requirements. See Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 963 (D. Minn. 2000) ("Notwithstanding the relative breadth of the consumer protection statutes, Rule 9(b) applies where, as here, the gravamen of the complaint is fraud."); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b)'s heightened pleading standard applies to California's consumer protection statutes). The requirements of Rule 9(b) are read "in harmony with the principles of notice pleading," and the level of particularity required depends upon the nature of a case. Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (citation and internal quotation marks omitted). However, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive

4

are not sufficient to satisfy the rule." Id. (citation and internal quotation marks omitted). To satisfy the heightened pleading requirement, a plaintiff must set forth the "who, what, where, when, and how" of an alleged fraud. United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citation and internal quotation marks omitted). In other words, a plaintiff must plead "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citation and internal quotation marks omitted).

**II. Class Allegations**

Select Comfort first argues that Azimpour lacks standing to bring claims based on products he did not purchase, relying principally on Chin v. General Mills, Inc., No. 12-2150, 2013 WL 2420455 (D. Minn. June 3, 2013), and Ferrari v. Best Buy Co., No. 14-2956, 2015 WL 2242128 (D. Minn. May 12, 2015). In those cases, the court determined that the named plaintiff lacked standing to pursue class claims seeking relief relating to products he or she had not purchased, explaining that "named plaintiffs in a class action may not rely on injuries that the putative class may have suffered, but instead must allege that they personally have been injured." Chin, 2013 WL 2420455, at *3; see Ferrari, 2015 WL 2242128, at *9.

Azimpour responds that <u>Chin</u> and <u>Ferrari</u> do not apply because his theory is not based on specific products, but is instead that Select Comfort engaged in a company-wide fraudulent pricing and advertising scheme as to all of its products. The court agrees that Azimpour's broader theory renders <u>Chin</u> and <u>Ferrari</u> inapposite, but the complaint is nevertheless inadequate. Specifically, Azimpour's allegations with respect to the fraudulent scheme are conclusory and speculative. Azimpour provides some detail regarding his purchase of the pillow, but the complaint is utterly lacking any specific allegations to support the claim or a broader scheme to defraud. <u>See, e.g.</u>, Compl. ¶ 12 ("[U]pon information and belief ... Defendant's acts, practices and policies pertaining to the advertising, marketing, and sale of merchandise at specific dollar or percentage discounts from "regular" or "original" retail prices were established in and emanated from Minnesota."); id. ¶ 15 (alleging that Select Comfort's "policies and practices concerning the false marketing, advertising and sale of merchandise at discounted, "original," and "regular" prices were prepared and issued from Minnesota" without any context); id. ¶ 23 (alleging that Select Comfort "knows that its comparative price advertising is false, misleading, and unlawful" without any factual basis); id. ¶ 24 (alleging, without specific facts, that Select Comfort "fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the Classes the truth about its

6

advertised price and former price"); id. ¶ 39 (alleging that Select Comfort's "price advertising scheme" was a "years-long campaign" without any factual basis). Azimpour does not identify any act, practice, or policy underlying the alleged scheme, nor does he give any context for the scheme. He also fails to provide any facts regarding any Select Comfort products other than the pillow he purchased. See id. ¶ 4. Azimpour simply declares that there was a scheme to defraud consumers.

In this regard, Azimpour's complaint is in stark contrast to Le v. Kohls Dep't Store, No. 15-1171, 2016 WL 498083 (E.D. Wis. Feb. 8, 2016), on which he heavily relies. In Le, also a putative class action, the plaintiff sued Kohl's for conduct similar to that alleged here, namely, fabricating "original" prices for its products so that the "sales" prices would be more attractive to consumers. Id. at *1. Unlike Azimpour, however, Le provided a factual basis for the alleged scheme in the complaint by incorporating data from an independent study of Kohls' sales practices. Id. at *2. The study showed that over the course of nine months, Kohls routinely sold products below the "original" price, which supported the theory that the so-called "original" prices were fictitious. Id. Azimpour's failure to plead similar facts here – whether through a similar study or otherwise – is fatal to his class allegations. The complaint simply does not meet the requirements established by Twombly and Iqbal, let alone Rule

7

9(b).  As a result, Azimpour has failed to adequately plead the class allegations and dismissal is warranted.[2]

## II. Jurisdiction Over Individual Claims

With the dismissal of the class allegations, the court is left to determine whether Azimpour's individual claims may proceed. Even assuming his individual claims are adequately pleaded,[3] it is apparent that the court lacks jurisdiction over such claims.[4] Azimpour bases his claims in state law, so there is no federal question jurisdiction.  There is also no diversity jurisdiction. Azimpour, a California citizen, alleges that Select Comfort, a Minnesota company, fraudulently induced him to purchase the pillow for $45 by representing that it was 50% off its regular price. Azimpour does not allege the pillow's actual value, but it appears that Azimpour's damages are in the range of $45 - the difference between the "sale" price and the "regular" price.  Azimpour's

---

[2] The court declines to redefine either putative class given the insufficiency of the complaint and does not reach Select Comfort's alternative motion to strike the class allegations.

[3] Azimpour fails to provide any factual basis for the key allegation that the pillow he purchased was on sale for 90 days before the purchase or the four months thereafter. Compl. ¶¶ 4, 22.  Nor does he explain the basis for his allegation that the pillow was continuously on sale during the several-month period identified in the complaint. See id. As a result, his individual claims are likely insufficiently pleaded.  Because the court concludes that it lacks jurisdiction over his individual claims, however, it does not reach the issue.

[4] Azimpour bases jurisdiction on the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).   Compl. ¶ 11.  With the dismissal of the class allegations, CAFA does not apply.

damages thus are far below the amount in controversy requirement. See 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States ....").

Azimpour's request for injunctive relief is likewise insufficient to reach the threshold amount in controversy. To determine whether diversity jurisdiction exists over a suit for injunctive relief, the amount in controversy is measured by the value to the plaintiff of the right sought to be enforced. Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). Azimpour bears the burden of pleading the jurisdictional amount. Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F.2d 924, 929 (8th Cir. 1965). The complaint does not establish that the requested injunctive relief, as it relates solely to Azimpour, is worth more than $75,000. As a result, the court lacks jurisdiction to consider Azimpour's individual claims.

**CONCLUSION**

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss [ECF No. 19] is granted; and

2. The case is dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 13, 2016

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court